854 P.2d 158

**STATE of Arizona, Appellant,**

v.

**Tamera G. AUSSIE, Appellee.**

**No. 1 CA–CR 91–1852.**

Court of Appeals of Arizona, Division 1, Department C.

June 3, 1993.

Melvin R. Bowers, Jr., Navajo County Atty. by Criss E. Candelaria, Deputy County Atty., Holbrook, for appellant.

Navajo County Public Defender by Ron D. Wood, Holbrook, for appellee.

OPINION

GRANT, Judge.

■ In this appeal, we determine that venue in a prosecution for custodial interference is proper in the county where the custodial parent resided at the time of the offense. Accordingly, we reverse the trial court's order dismissing the indictment.

**FACTUAL AND PROCEDURAL BACKGROUND**

A Navajo County grand jury indicted Tamera G. Aussie ("defendant") on one

count of custodial interference, a class 6 felony. Shortly thereafter, defendant filed a motion for redetermination of probable cause pursuant to Rule 12.9, Arizona Rules of Criminal Procedure. In part, the motion alleged that the grand jury acted without authority under Ariz.Rev.Stat.Ann. ("A.R.S.") section 21–407 (1990), because the offense was not one "which may be tried" in Navajo County.

The relevant facts are those in the record of the grand jury proceedings. The record shows that, following the dissolution of the marriage between defendant and Mahmoud Aussie ("Mahmoud"), a Navajo County Superior Court judge awarded Mahmoud custody of his two minor daughters. The custody order provided that defendant would have eight weeks of summer visitation with her daughters. Defendant lived in Bullhead City, which is in Mohave County, Arizona and Mahmoud lived in Holbrook, which is in Navajo County, Arizona. The order provided that the children would be exchanged roughly halfway between the parents' residences, in Williams, which is in Coconino County, Arizona.

Mahmoud delivered the children to defendant in Williams on May 24, 1991. Although the eight-week visitation was to end on July 19, Mahmoud agreed to extend it until July 21 to allow his daughters to attend a wedding with their mother. On July 21, Mahmoud travelled to Williams to pick up the children. They never arrived. Defendant complained to law enforcement authorities in Bullhead City and in Holbrook. On August 9, authorities arrested defendant at the casino where she worked in Laughlin, Nevada. At that point, Bullhead City police located the children and turned them over to Mahmoud.

The trial court found that

The defendant was not present in Navajo County at any time relative to the alleged misconduct. The defendant did not pick up the children in Navajo County

and was residing in Mohave County at the time the children were obtained by their father. Under that scenario, the defendant could well be charged with contempt of court for failure to comply with the civil order. However, failure to comply did not take place in Navajo County and the Grand Jury may not consider criminal conduct that is not triable in this county. A.R.S. 21–407 limits the Grand Jury's scope of inquiry.

The judge dismissed the indictment without prejudice. The state filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. section 13–4032(1).[1]

## ISSUE

In light of the undisputed factual allegations, the question presented is strictly one of law: Did the trial judge err in finding that the custodial interference charge was not "triable" in Navajo County?

## ANALYSIS

The trial judge's order of dismissal necessarily implicates Arizona's constitutional and statutory provisions regarding venue. *State v. Cox*, 25 Ariz.App. 328, 332, 543 P.2d 449, 453 (1975). The Arizona Constitution, article II, section 24 provides: "In criminal prosecutions, the accused shall have the right ... to have a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed...." The relevant statute is A.R.S. section 13–109, which states in pertinent part:

A. Criminal prosecutions shall be tried in the county in which conduct constituting any element of the offense or a result of such conduct occurred, unless otherwise provided by law.

In addressing issues of venue, Arizona courts have considered constitutional and statutory provisions in tandem. *See State*

---

1. Challenges to grand jury proceedings are generally reviewable in this court only by special action. *State v. Verive*, 128 Ariz. 570, 575, 627 P.2d 721, 726 (App.1981). However, because it dismissed the indictment, rather than remanded for a new determination of probable cause, the

trial court's order is reviewable on appeal by the state. *See* A.R.S. § 13–4032(1) (permitting appeal from "An order dismissing an indictment, information or complaint or count of an indictment, information, or complaint").

*v. Comer*, 165 Ariz. 413, 422–423, 799 P.2d 333, 342–343 (1990), *cert. denied*, 499 U.S. 943, 111 S.Ct. 1404, 113 L.Ed.2d 460 (1991); *State v. Lambright*, 138 Ariz. 63, 70–71, 673 P.2d 1, 8–9 (1983), *cert. denied*, 469 U.S. 892, 105 S.Ct. 267, 83 L.Ed.2d 203 (1984), *overruled on other grounds, Hedlund v. Sheldon*, 173 Ariz. 143, 840 P.2d 1008 (1992). The state argues that venue was proper in Navajo County because defendant's "conduct"[2] outside the county— whether viewed as keeping the children in Bullhead City or failing to return them to Williams—nevertheless resulted in harm to Mahmoud in Holbrook. Whether causing a "result" in a given county confers venue in that county may be a complex question. It appears that, under A.R.S. section 13–109(A), such a result need not be an element of the offense. *Cf. State v. Miller*, 157 Ariz. 129, 133–134, 755 P.2d 434, 438–439 (App.1988) (construing nearly identical language in jurisdictional statute, A.R.S. section 13–108(A)(1), court notes that statute omits the "restriction that the result occurring within the state must be an element of the offense"). However, Arizona Supreme Court cases suggest that, to satisfy the state constitutional requirement of trial in "the county in which the offense is alleged to have been committed," the result conferring venue must be an element of the offense. This interpretation results from our supreme court's apparent approval of the analysis of *State v. Cox*. In that case, Division Two of this court held, under a prior statute, that an "act" conferring venue "must be one essential to the commission of the crime charged as such crime is defined by the statute. In other words, the act must be part of the corpus delicti of the crime...." *State v. Poland*, 132 Ariz. 269, 275, 645 P.2d 784, 790 (1982), *quoting Cox*, 25 Ariz.App. at 331, 543 P.2d at 452, *aff'd Poland v. Arizona*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986); *see also Comer*, 165 Ariz. at 422, 799 P.2d at 342.[3] Whether this analysis has a constitutional,

as opposed to a statutory, basis is not made completely clear in either *Poland* or *Comer*. Therefore, it is at least arguable that if a result is not part of the "corpus delicti" of the offense, it may be insufficient to confer venue.

Such a problem is not presented to us, however, because the custodial interference statute, A.R.S. section 13–1302, includes as an element a prohibited "result" that, as alleged in this case, occurred in Navajo County. The statute provides, in pertinent part:

A. A person commits custodial interference, if, knowing or having reason to know that he has no legal right to do so, such person knowingly takes, entices or keeps *from lawful custody* any child less than eighteen years of age or incompetent, entrusted by authority of law to the custody of another person or institution.

(Emphasis added.) The prohibited result is that specified by the language highlighted above: the deprivation of "lawful custody."

The parties have not cited, nor have we discovered, any cases that address the issue of venue in the context of custodial interference. However, cases that deal with similar statutes in the analogous context of subject matter jurisdiction are instructive. Helpful guidance is provided by *Wheat v. State*, 734 P.2d 1007 (Alaska App. 1987), in which the Alaska court interpreted a custodial interference statute like ours to find jurisdiction over a defendant who kept his daughter in Arizona following an authorized visitation period. The court stated:

It is evident that this statutory provision requires, as an element of the offense that it describes, proof of a result that is separate from and additional to its *actus reus* component. In order to establish the offense charged, it was incumbent on the state to prove more than Wheat's knowing act of keeping Crystal in Ari-

---

**2.** "Conduct" means an act or omission and its accompanying culpable mental state. A.R.S. § 13–105.4.

**3.** In both *Poland*, a first-degree murder case, and *Comer*, in which the crimes at issue were

sexual assaults, the court found conduct sufficient to support venue in the county in question. Neither case considered a "result" that was an element of an offense.

zona. The state was required to show that, as a direct result of Wheat's conduct, Crystal's mother was deprived of the lawful custody of her daughter—in other words, that Crystal was kept "from a lawful custodian." It is this prohibited result, rather than the proscribed conduct *per se*, that is the gravamen of the offense and it is precisely this result that occurred in Alaska.

*Id.*, 734 P.2d at 1010.

Also helpful is *State v. Doyle*, 121 Idaho 911, 828 P.2d 1316 (1992), a case with facts similar to those presented here. The defendant, a father who lived in Washington, and the mother, who lived in Idaho, had a custody agreement that provided for exchange of their son in Pendleton, Oregon. The defendant failed to deliver the child to Pendleton following visitation. Fifteen months later, defendant was arrested and extradited to Idaho to face a felony complaint initiated by the mother. In rejecting defendant's challenge to Idaho jurisdiction, the supreme court noted that the Idaho custodial interference statute, also similar to A.R.S. section 13–1302, included as an element the prohibited result of deprivation of custody. Despite the fact that defendant had failed to deliver the child in Oregon, the court found that a result sufficient to confer jurisdiction had occurred in Idaho:

> [T]he duty to return the child to the custodial parent follows the custodial parent. Therefore, when Cindy returned to Idaho, Doyle's duty to return Shawn followed her and gave the Idaho court jurisdiction over his withholding in violation of that duty.
>
> Not only did the withholding occur in Idaho but the result occurred in Idaho as well.

at 916, 828 P.2d at 1321. Courts in other jurisdictions have reached the same conclusion. *See People v. Caruso*, 119 Ill.2d 376, 116 Ill.Dec. 548, 553, 519 N.E.2d 440, 445 (1987), *cert. denied*, 488 U.S. 829, 109 S.Ct. 83, 102 L.Ed.2d 59 (1988); *Trindle v. State*, 326 Md. 25, 602 A.2d 1232, 1235–1237 (1992); *People v. Harvey*, 174 Mich.App. 58, 435 N.W.2d 456, 457 (1989); *Roberts v.*

*State*, 619 S.W.2d 161, 164 (Tex.Crim.App. 1981); *Rios v. State*, 733 P.2d 242, 250 (Wyo.1987), *cert. denied*, 484 U.S. 833, 108 S.Ct. 108, 98 L.Ed.2d 68 (1987).

Defendant criticizes the result in *Wheat* but cites no custodial interference cases that have reached a different result. *Wheat* itself notes contrary authority, *see People v. Gerchberg*, 131 Cal.App.3d 618, 181 Cal.Rptr. 505 (1982); *State v. McCormick*, 273 N.W.2d 624 (Minn.1978), but we find these cases distinguishable. *Gerchberg* was decided on the basis of a California statute that required the commission of acts, rather than a "result," within the state to confer jurisdiction. Similarly, in *McCormick*, the focus was not on whether a "result" occurred within the state, but rather on constitutional factors that barred the exercise of Minnesota jurisdiction. Neither case is instructive on the narrow venue question before us.

We reverse the trial court's order of dismissal and reinstate the indictment and remand for further proceedings.

GARBARINO, P.J., and WEISBERG, J., concur.