Certiorari Denied, November 5, 2015, No. 35,546

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2015-NMCA-117

Filing Date: September 3, 2015

Docket No. 33,396

STATE OF NEW MEXICO,

      Plaintiff-Appellant,

v.

ADRIA LEFTHAND,

      Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY
Sarah C. Backus, District Judge

Hector H. Balderas, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellant

Jorge A. Alvarado, Chief Public Defender
Nina Lalevic, Assistant Public Defender
Santa Fe, NM

for Appellee

OPINION

KENNEDY, Judge.

{1}    The State appeals from dismissal of an indictment against Defendant on one count of custodial interference for improper venue. We reverse the district court, holding that the place where a person, with a right of custody, was deprived of that right by the wrongful actions of another establishes a proper venue for the trial of the crime. In this case, the

person with whose custody Defendant interfered resided in and has the right to custody of the child in Taos County. This is sufficient to confer venue on the district court in Taos County. The case is remanded with an order to reinstate the indictment against Defendant in the Taos County district court.

**FACTS AND PROCEDURAL BACKGROUND**

**{2}** Defendant and Gilbert Martinez lived in Taos, New Mexico, and have a son who was born in Taos. As the result of Defendant's petition to determine paternity, custody, and support, the Taos County district court entered a stipulated order in 2007 governing support and custody and granting Gilbert Martinez visitation with his child.

**{3}** After the order was entered, Defendant moved to Albuquerque, while Martinez remained in Taos. After problems with Defendant's compliance with ordered time sharing, Martinez requested the Taos County district court to modify the prior order; the district court found that Martinez had made a good faith effort to maintain time- sharing with his child, and Defendant had thwarted those efforts. The district court entered an order containing a new time-sharing plan to begin on August 10, 2010.

**{4}** Martinez was unable to exercise his rights to custody under the time-sharing plan from August 2012 through January 2013 because Defendant did not abide by the new plan. Orders to show cause elicited no response from Defendant. Subsequently, Defendant was indicted by a Taos County grand jury for custodial interference. Defendant moved to dismiss the indictment for improper venue, maintaining that since she had failed to deliver the child to Martinez in Santa Fe, where the August 2012 order directed the exchange of custody to take place, venue was not proper in Taos County.

**{5}** The district court agreed with Defendant and dismissed the indictment. Its order of dismissal found that "the only connection to Taos County in the above styled case is that the parenting plan was entered into in Taos County and the alleged victim resides in Taos County". It further found that "none of the material elements of the crime were alleged to have been committed in Taos County, and thus venue is improper in Taos County." The State appealed.

**DISCUSSION**

**{6}** We review de novo questions involving the statutory interpretation of the essential elements that must be proven to constitute a criminal offense. *State v. Roybal*, 2006-NMCA-043, ¶ 25, 139 N.M. 341, 132 P.3d 598. Questions involving the statutory interpretation of what essential elements must be proven to constitute a criminal offense are likewise reviewed de novo. *State v. Rivera*, 2004-NMSC-001, ¶ 9, 134 N.M. 768 82 P.3d 939. When construing a statute, we first refer to the statute's plain meaning, avoiding constructions that would produce an absurd result; if absurdity would result, we construe the statute according to its obvious spirit or reason. *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 19, 117

N.M. 346, 871 P.2d 1352. Venue is not an element of an offense and does not relate to the guilt or innocence of the defendant; as a result, "it may be established by a mere preponderance of the evidence."*Roybal*, 2006-NMCA-043, ¶ 19.

**{7}** Defendant does not dispute that Martinez has custody rights from the court order setting time sharing with their son, that all acts alleged in the case occurred in New Mexico, or that the child was present within New Mexico at all relevant times. Defendant states that "[t]he alleged acts or omissions in this case took place in either Santa Fe or Bernalillo County." According to Defendant, Bernalillo County would be a proper venue in which to try the allegation that she detained the child by refusing to leave her home there, and Santa Fe County would have venue over the allegation that she did not turn the child over to Martinez in that county as ordered by the Taos County district court, possibly satisfying the "failing to return" element. This focus on the various methods of committing the crime begs question of what constitutes the elements of custodial interference, in order to determine where Defendant transgressed any that might be essential.

**A.      Constitutional and Statutory Provisions Governing This Case**

**1.      Custodial Interference**

> Custodial interference consists of any person, having a right to custody of a child, maliciously taking, detaining, concealing or enticing away or failing to return that child without good cause and with the intent to deprive permanently or for a protracted time another person also having a right to custody of that child of his right to custody. Whoever commits custodial interference is guilty of a fourth degree felony.

NMSA 1978, § 30-4-4(B) (1989).

> " '[R]ight to custody' " means the right to physical custody or visitation of a child arising from:
>
>> (a)  a parent-child relationship between the child and a natural or adoptive parent absent a custody determination; or
>>
>> (b) a custody determination.

§ 30-4-4(A)(5)(a)(b).

**2.      Constitutional and Statutory Provisions Regarding Venue**

> All trials of crime shall be had in the county in which they were committed. In the event elements of the crime were committed in different counties, the trial may be had in any county in which a material element of the crime was

3

committed.

NM Const., art. II, § 14.

> In all criminal prosecutions, the accused shall have the right to appear and defend himself in person . . . [and] to have . . . a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed.

NMSA 1978, § 30-1-14 (1963).

## B.  Nature of the Custodial Interference Offense

### 1.  Defendant's Arguments and the District Court's Order

**{8}**    Defendant asserts that the *actus reus*—the wrongful deed—is solely the act of detaining or failing to deliver the child. She insists that the elements of the crime are limited to "the alleged actions of the accused, not the effect those actions have on other people." Defendant asserted to the district court that her failure to deliver the child to his father in Santa Fe was the only alleged element or act of custodial interference. She has expanded this view on appeal to include detaining the child in Bernalillo County where she resides, but insists that because none of the things she allegedly did to transgress the elements of the crime "took place in Taos County[,]" venue in Taos County was improper.

**{9}**    The district court appears to have agreed with Defendant's arguments in dismissing the indictment. The district court set out the *actus reus* elements as "taking, detaining, concealing, enticing away or failing to return [a] child," and the *mens rea* as doing the acts maliciously "with the intent to deprive permanently or for a protracted period of time another person having a right of custody of that child of his right of custody." It found that Defendant failed to turn over the child to his father in Santa Fe County and that "none of the material elements of the crime were alleged to have been committed in Taos County[.]" The State asserts that this is not the sum of the essential elements. We must determine what the elements of the offense are.

### 2.  Deprivation of Custodial Rights is the Gravamen of the Offense and a Necessary Element of Custodial Interference

**{10}**    The ultimate goal in statutory construction "is to ascertain and give effect to the intent of the Legislature." *State v. Cleve*, 1999-NMSC-017, ¶ 8, 127 N.M. 240, 980 P.2d 23. The title of a statute is frequently useful to directing its construction. *Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 2012-NMSC-039, ¶ 18, 289 P.3d 1232. Here, the statute is entitled "[C]ustodial [I]nterference," and it "is intended to prevent persons with custodial rights from disrupting another person's right to custody." *State v. Munoz*, 2006-NMSC-005, ¶ 16, 139 N.M. 106, 129 P.3d 142. The

4

gravamen of a criminal offense is the "burden or gist of a charge; the grievance or injury specially complained of." *Black's Law Dictionary* 547 (2d ed. 1910). We still emphasize the "wrong or evil the statute is designed to remedy." *State v. Hernandez*, 2001-NMCA-057 ¶ 18, 130 N.M. 698, 30 P.3d 387. The gist of this offense is to punish the intentional disruption or deprivation of the established custody rights of another.

**{11}** The elements cited by the Taos County district court, such as taking, detaining, concealing, or enticing away, are no more than various *means* of accomplishing the gravamen of the offense, which is an unlawful deprivation of, or interference with, the right of custody. *See State v. Sung*, 2000-NMCA-031, ¶ 9, 128 N.M. 786, 999 P.2d 430 (describing "detaining" and "failing to return" a child as "forms of custodial interference" (internal quotation marks and citation omitted)); *cf. State v. Swick*, 2012-NMSC-018, ¶ 40, 279 P.3d 747 (holding that additional elements aggravating the crime of burglary only modified the crime[,] but "do not change the gravamen of the crime," which was unlawful entry (internal quotation marks omitted)).

**{12}** In *Munoz*, our Supreme Court determined that interference with the right to custody may be accomplished either by "taking interference," or "failing to return interference." 2006-NMSC-005, ¶ 14. Both types of interference "require malice and the intent to deprive permanently or for a protracted time another person of his or her custodial rights." *Id.* ¶ 15. Commission of the crime requires malice and the specific intent to deprive the custodial parent of his or her right to custody. Section 30-4-4(B). Congruence between the required intent and the stated subject matter of the crime "demand[s] the inclusion of intent as an element of the crime." *State v. Lawson*, 1955-NMSC-069 ¶ 10, 59 N.M. 482, 286 P.2d 1076.

**a.    The Crime Is Not Completed Until the Intended Result is Achieved**

**{13}** Where the indictment alleges that Defendant "did maliciously take, detain, conceal or entice[] away or fail[] to return said child" with the requisite intent, and those elements are found by the district court to have occurred elsewhere than Taos County, our inquiry cannot end if there is another essential element to the crime that was not considered. Prohibited acts, like detaining and failing to return the child, do not complete the crime. The crime of custodial interference is only complete once the person who has the right to custody suffers the malicious and intended harm the custodial interference statute seeks to prevent. Thus, when Defendant concedes the State's argument "that an essential element of the crime is deprivation of the lawful right to custody of a child[,]" but insists that it is the acts, not the result accomplished, that are the elements of the offense, Defendant paints an incomplete picture.

**{14}** In the context of custodial interference, most other states that have considered the elements of custodial interference hold that it is deprivation of the custodial right—the "prohibited result, rather than the proscribed conduct *per se*, that is the gravamen of the offense". *Wheat v. State*, 734 P.2d 1007, 1010 (Alaska Ct. App. 1987); *see Foster-Zahid v. Comm.*, 477 S.E.2d 759, 762, (Va. Ct. App. 1996) (pointing out that the act of withholding

5

is the gravamen of the offense; doing so outside the commonwealth is the element elevating a misdemeanor to a felony); *State v. Spina*, 99 S.W.3d 596, 598 (Tenn. Crim. App. 2002) ("[T]he gravamen of the State's prosecution is that the Defendant knowingly detained the child " 'from the vicinity where the child . . . is found' "). Idaho included deprivation of custody as something accomplished by one who "[t]akes, entices away, keeps or withholds any minor child from a parent or other person . . . having . . . visitation or other parental rights[.]" *State v. Doyle*, 828 P.2d 1316, 1320 (Idaho 1996) (emphasis omitted). Arizona, whose statute forbids a person knowingly taking, enticing, or keeping for lawful custody any child, likewise recognizes the prohibited result of the crime as "the deprivation of 'lawful custody.' " *State v. Aussie*, 854 P.2d 158, 160 (Ariz. Ct. App. 1993). In New Mexico, when a defendant maliciously acts with requisite specific intent "to deprive permanently or for a protracted time another person also having a right to custody of that child of his right to custody[,]" deprivation of a person's right to custody is an intended harmful result of committing the crime. *Munoz*, 2006-NMSC-005, ¶ 14. It follows that deprivation is an essential element of the offense; emphasizing actions like enticing, withholding, detaining, or failing to return a child to their custodial parent highlights the means to the end.

**{15}**   In short, the *actus reus*—Defendant's conduct—and its intended result are both separate and complementary material elements of the crime. "Where, however, a statute, in addition to prohibiting conduct, includes within its definition of the offense a specific result, then the crime is not completed until that result occurs. And if the prohibited result occurs in a place other than the conduct which occasioned it, the location of the result may fairly be deemed the place where the crime is 'consummated.' " *Trindle v. State*, 602 A.2d 1232, 1236 (Md. 1992) (quoting *Wheat v. State*, 734 P.2d 1007, 1009), *abrogated on other grounds by Surland v. State*, 895 A.2d 1034 (Md. 2006). Acting in certain ways with the intent to deprive a person of custody of a child is only complete when the victim custodial parent's right to custody has suffered the interference. *See* 51 C.J.S. *Kidnapping* § 31 (2015) ("Deprivation of custodial rights is a requisite element of the offense of custodial interference.").[1]

**{16}**   In light of our Supreme Court's holding in *Munoz* that the purpose of the statute is to prevent interference with a person's custody, we hold that interfering with or depriving a custodial parent of their right to custody is an essential element of the crime of custodial interference. Thus, we regard the district court's order as erroneously leaving from its consideration the necessary element of Defendant's deprivation of Martinez's right of custody with his son. Instead, the court concentrated on the places where the methods were employed by which the interference or deprivation was accomplished. The venue statute is clear: "In the event elements of the crime were committed in different counties, the trial may be had in any county in which a material element of the crime was committed." Section 30-1-14. Because deprivation is an element, where it occurred is critical for a determination of

---

[1]We note that the elements stated in this section of the C.J.S. are nearly identical to those in Section 30-4-4.

6

venue.

### 3. Determining Where Deprivation of Custody Rights Occurred

**{17}** The fact that some elements of the offense may have occurred elsewhere does not defeat venue as long as *any* material element of the crime was committed in the county in which the defendant is charged. Section 30-1-14; *State v. Smith*, 1979-NMSC-020, ¶ 11, 92 N.M. 533, 591 P.2d 664. We now join the majority of states that have concluded that deprivation of custody is an element of custodial interference and held venue to be proper in the county in which the custodial parent who suffered the deprivation resides. In Virginia, the gravamen of the offense is not the taking or abduction but the "withholding the child from the child's custodial parent[,]" and venue is proper in the county where the harm resulted from the criminal act, namely, where the parent entitled to custody resided when deprived of it by the defendant. *Foster-Zahid*, 477 S.E. 2d at 762; *see State v. Young*, 2007 MT 323, ¶ 29, 340 Mont. 153, 174 P.3d 460 (holding venue proper where deprivation occurred); *Spina*, 99 S.W.3d at 599 (holding that the trial court of the county in which the custodial parent resides has venue). In Idaho, "the duty to return the child to the custodial parent follows the custodial parent." *See Doyle*, 828 P.2d at 1321.

**{18}** Defendant conceded the necessary element of deprivation of custody in the crime of which she is accused. She cites to no contrary authority from any state that, having recognized the element, has failed to establish venue in the county where the deprivation occurred. We therefore hold that deprivation of custodial rights is an essential element of the crime of custodial interference and that the element is satisfied in the county where the result of the defendant's actions is felt by the person so deprived.

**{19}** We are not persuaded by Defendant's attempts at distinguishing various cases we have cited, including *Aussie*, *Foster-Zahid*, and *Wheat*. Suffice it to say that the specifics of those cases that purportedly distinguished them from the present case are not relevant in light of the holdings in those cases, which firmly establish that deprivation of custody is the gravamen of the offense and that venue may be found in the county where the element of deprivation occurs. The right to custody enjoyed by the person injured by the crime in this case must be established by proving the existence of a court order. Section 30-4-4(A)(5)(b), (B) (requiring that a custody order establish a right to custody or visitation in the person whose rights have been transgressed). Martinez was given custody by an order of the district court in Taos County, and he resides in Taos County.

**{20}** We conclude that his right to custody was thwarted by Defendant in Taos County. His "right to custody" is based on an order issued by a Taos county district court, and Defendant violated that court order by depriving Martinez of that right. *See Sung*, 2000-NMCA-031, ¶ 12 (accepting that custodial interference "essentially amounts to violating a duty that arises in this state"). Given that Martinez's right to custody was based on a court order from Taos County, Section 30-4-4(A)(5), and was denied by Defendant's actions, venue will lie in Taos County district court, and Defendant violated that court order

7

by depriving Martinez of that right. *See, e.g.*, *People v. Caruso*, 519 N.E.2d 440, 442-43 (Ill. 1987) (rejecting the argument that the crime is committed where the children were concealed and establishing venue in the county in which the detrimental effects of the actions are felt); *Trindle,* 602 A.2d at 1236 (holding that venue lies in the county in which the custodial parent was deprived of custody and the court's authority was flouted). The locus of the legal right to custody suggests another well-recognized reason to recognize venue in the Taos County district court. If the violation of the right imposed by a court order is part of the offense, then venue should certainly lie in the court whose order was violated. *Dugie*, 1999-NMSC-002, ¶ 6.

**4.      Venue Is Proper In Taos County**

**{21}**     Because venue must be supported by no more than a preponderance of the evidence, *see Roybal* 2006-NMCA-043, ¶ 19, we conclude that burden is amply met here. The source of Martinez's custody right and its deprivation are both essential elements, proof of which is to be found in Taos County. Martinez's right of custody of the child exists with him in his county of residence, the county in which he was given custody, and, most importantly, the county in which he was deprived of the custody of his son by the Defendant. The custody order, to the extent it might have sought to facilitate matters of exchange by providing that the exchange itself would occur in Santa Fe County or by allowing Defendant to reside in Bernalillo County with their child, does not change these facts. We hold that under our statute criminalizing custodial interference, a person may be charged in the place where the harm sought to be prevented by the statute results—even if the actions that started the events causing the harm occurred elsewhere. We hold that venue is proper in the Taos County district court.

**CONCLUSION**

**{22}**     We reverse the district court, and remand with instructions to reinstate the indictment against the Defendant on the Taos County district court's trial docket.

**{23}    IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**TIMOTHY L. GARCIA, Judge**